IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00267-MOC-WCM

| | |
|---|---|
| PHILLIP HUNTSINGER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF THE SOCIAL ) <br> SECURITY ADMINISTRATION, ) <br> ) <br> Defendant. ) <br> _____ ) | MEMORANDUM AND <br> RECOMMENDATION |

This matter is before the Court on the parties' cross Motions for Summary Judgment (Docs. 7, 9), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. Procedural Background

In May of 2019, Plaintiff Phillip Huntsinger ("Plaintiff") filed an application for supplemental security income. Transcript of the Administrative Record ("AR") 281-289. Plaintiff alleges disability beginning on May 8, 2019.

On March 4, 2021, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 12-36. That decision is the Commissioner's final decision for purposes of this action.

1

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "back impairment; deep venous thrombosis; chronic obstructive pulmonary disease; anxiety disorder; affective disorder; and post-traumatic stress disorder (PTSD)." AR 18. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work…except the claimant can stand and walk for four hours and sit for six hours, meaning there is a sit stand option. The claimant is limited to frequent postural and occasional ropes, ladders, and scaffolds. He must avoid concentrated exposure to extreme heat and extreme cold, wetness and humidity, hazards, and fumes and other respiratory irritants. The claimant is limited to simple, routine, repetitive work, frequent contact with coworkers and supervisors, and occasional contact with the public. He is limited to SVP one and two and reasoning level one, two, and three jobs.

AR 22.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that existed in significant numbers in the national economy such that Plaintiff was not disabled. AR 29.

## III. Plaintiff's Allegations of Error

Plaintiff argues that the ALJ failed to evaluate appropriately Plaintiff's need to elevate his lower extremities, and that this matter should be remanded because the Commissioner's decision was unconstitutional.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a

3

federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Discussion

### A. Leg Elevation

An ALJ must "build an accurate and logical bridge from the evidence to his conclusion" when assessing a claimant's RFC. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citing Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). Although an ALJ is not required to discuss every piece of evidence, see Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014), if the ALJ does not indicate how the facts he cites disprove a claimant's need for an accommodation, review of his decision is impossible, and remand is needed. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) see also Mayberry v. Berryhill, No. 5:17-cv-175-GCM, 2018 WL 3543085, at *3 (W.D.N.C. July 23, 2018) ("A failure to provide an adequate explanation frustrates the ability of the Court to conduct meaningful review and determine whether the ALJ's decision is supported by substantial evidence"); Darby v. Berryhill, No.

1:16cv366-RJC, 2018 WL 310136, at *6 (W.D.N.C. Jan. 5, 2018) ("if the ALJ shows her work, then the Court will most likely find substantial evidence supporting her ultimate conclusion").

At the same time, it is the claimant's burden to establish that he suffers from an impairment which limits his functional capacity. 20 C.F.R. 404.1505; 416.905; see Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

Here, Plaintiff contends that the ALJ erred by either failing to include Plaintiff's need to elevate his lower extremities in Plaintiff's RFC or explaining why such an accommodation was unnecessary.

In support of his position, Plaintiff cites medical records reflecting Plaintiff's complaints of swelling and deep vein thrombosis beginning in 2015 and continuing through 2020. See Doc. 8 at 4-6 (citing AR 390-391, 397-398, 830-832, 891-893, 860-862, 2214-2215, 2220-2221, 2418-2420, 2432-2435) (medical records reflecting Plaintiff's swelling and localized edema, as well as findings of deep vein thrombosis and difficulties with medication compliance). Plaintiff also relies on his own hearing testimony in which he stated that he needed to prop up his leg due to swelling. AR 48-51 (plaintiff's testimony that after "about 45 minutes or so" on his feet, he has to sit down and "prop up" his leg above his head for about 30 minutes to an hour).

Plaintiff does not, however, cite medical records dated after his alleged disability onset date that include a recommendation that Plaintiff elevate his

5

legs. Rather, the only medical record cited by Plaintiff that indicates that he was instructed to elevate his legs is from February 2017 – more than two years prior to the date he alleges he became disabled – and reflects that he was "directed to engage in rest, ice and [lower extremity] elevation." Doc. 8 at 5 (citing AR 862). That record is an emergency room report relative to Plaintiff's treatment for a possible ankle sprain with significant swelling and bruising to his foot after he twisted his ankle while attempting to move a washing machine and the washing machine fell on his foot. Id.

Further, the ALJ acknowledged Plaintiff's hearing testimony, see AR 22 (noting that Plaintiff testified regarding blood clots in his legs, swelling, the need to prop his legs up at times, and that he can stand for about 45 minutes), and also stated that the medical records reflected "a history of deep venous thrombosis and ongoing lower extremity edema." AR 23.

The ALJ also explained that he limited Plaintiff to "less than light work" and "standing and walking for four hours" with additional climbing limitations to account for Plaintiffs deep vein thrombosis and ongoing lower extremity edema, AR 23, and engaged in a review of Plaintiff's medical records when determining those functional limitations. AR 25-26 (concluding that Plaintiff could "ambulate independently without an assistive device," had grossly normal strength, and a normal gait and citing AR 2432-2437); see also AR 23 (citing AR 2203-2207 (Dr. Stephen Burgess consultative examination findings

indicating Plaintiff ambulated with a "somewhat wide-based gait" which was "somewhat unsteady as well as antalgic," was unable to walk on heels or toes or "perform tandem gait" but could squat with assistance, did not exhibit a lurching or unpredictable gait, did not require use of a handheld assistive device, had a normal stance, and appeared comfortable in the sitting and supine position)).

Finally, the ALJ discussed the opinions of the state agency consultants regarding Plaintiff's physical limitations and found those opinions to be "partially persuasive." AR 27. The consultants determined, among other things, that Plaintiff was limited to light work, and had additional limitations with respect to his ability to climb ladders, ropes, scaffolds, ramps, and stairs. AR 27 (citing AR 140-143; AR 157-160). While the ALJ noted that the consultants' opinions were "generally consistent with the overall record," the ALJ determined that Plaintiff was "somewhat further limited, particularly in standing and walking" and again noted that Plaintiff "has ongoing leg pain related to deep venous thrombosis," edema in his lower extremity, and had been observed to have an antalgic gait. AR 27.

Accordingly, the ALJ's discussion indicates that he considered Plaintiff's complaints of leg pain and swelling and developed an RFC to account for Plaintiff's limitations, which RFC was supported by substantial evidence. Compare Hunter-Tedder v. Berryhill, No. 5:17-cv-53-MOC, 2017 WL 5759941

7

(W.D.N.C. Nov. 28, 2017) (remanding where the ALJ failed to discuss plaintiff's need to elevate her legs despite plaintiff's treating physician statement that she needed to do so, and explaining that if the ALJ had given the treating physician's opinion no weight as in conflict "with other elements of the record, that would have been an appropriate method of explaining why that limitation was not included," but the ALJ failed to provide that analysis); Hall v. Berryhill, No. 3:17-CV-00285-MOC, 2018 WL 1463702, at *3 (W.D.N.C. Mar. 23, 2018) (finding that the ALJ erred because he failed to "explain why he did not include the need for above-waist elevation or why claimant's testimony in that regard was not credible. Likewise, there is no medical evidence cited by the ALJ that supports the need for only 10 inches of elevation") with Pulliam v. Kijakazi, No. 1:20-cv-371-MOC, 2022 WL 89876, at *5 (W.D.N.C. Jan. 7, 2022) ("In light of the supporting discussion the ALJ provided in her decision, there is no merit to Plaintiff's claim that the ALJ should have included in the residual functional capacity finding a limitation allowing for Plaintiff to elevate her legs over the course of a workday"); Edwards v. Commissioner of Social Security, No. 1:21-cv-00134-RJC, 2022 WL 3352298, at *5 (W.D.N.C. Aug. 12, 2022) ("Unlike Hunter-Tedder and Hall, the ALJ in this case noted [plaintiff's] testimony that he required three to eight hours of leg elevation daily, described the medical evidence showing that [plaintiff] had healed in the two years since his injuries, and explained his conclusion that additional

limitations for [plaintiff's] lower extremities were unwarranted in light of his recovery").

### B. Plaintiff's Constitutional Challenge

Plaintiff also argues that then-Acting Director Berryhill was not properly appointed, in light of the Federal Vacancies Reform Act, at the time she ratified the appointment of the ALJ in this case on July 16, 2018, such that the ALJ's ratification was "in violation of the Appointments Clause…." Doc. 8 at 11.

In <u>Edwards v. Commissioner of Social Security</u>, No. 1:21-cv-00134-RJC, 2022 WL 3352298, at *4 (W.D.N.C. Aug. 12, 2022), a court in this district rejected this argument and explained:

> Plaintiff argues that Acting Director Berryhill ratified the appointment of the ALJ in this case without proper authority as it was after the 210-day limit established by Congress under 5 U.S.C. § 3346. "Under the Federal Vacancies Reform Act (FVRA), 5 U.S.C. § 3346(a)(1), even if Ms. Berryhill's initial eligibility to serve as Acting Commissioner previously expired, then-President Trump nominated Andrew Saul for Commissioner in April 2018, such that Ms. Berryhill once again was eligible to serve as Acting Commissioner. The FVRA incorporates a spring-back provision, which permits the acting officer to begin performing the functions and duties of the vacant office again upon the submissions of a nomination, even if the 210-day period expired before that nomination was submitted." <u>Hutchens v. Kijakazi</u>, No. 1:20-CV-1124, 2021 WL 5834409, at *7 (M.D.N.C. Dec. 9, 2021). Here, Acting Director Berryhill ratified the appointment of the ALJ in this case on July 16, 2018, after President Trump nominated Mr. Saul for the position. This triggered the spring-back provision, and

9

Acting Director Berryhill was properly serving at the time she ratified the ALJ's appointment.

Other courts have reached similar conclusions. See Taylor v. Kijakazi, No. 1:21CV648-JLW-WLO, 2022 WL 4668273, at *9 (M.D.N.C. Aug. 2, 2022) ("the undersigned agrees with the other judges from this Court, Circuit, and others who have considered this issue at considerable length and concluded that this appointment clause argument has no merit") (citing Williams v. Kijakazi, No. 1:21-CV-141-GCM, 2022 WL 2163008, at *2-4 (W.D.N.C. June 15, 2022)), recommendation adopted, 2022 WL 4621418 (M.D.N.C. Sept. 30, 2022); see also Black v. Kijakazi, No. 1:21-CV-322-KDB, 2022 WL 2977340, at *3 (W.D.N.C. July 27, 2022) (finding that acting Commissioner Berryhill was validly serving under the Federal Vacancies Reform Act).

## VI. Recommendation

The undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 7) be **DENIED**, and that the Commissioner's Motion for Summary Judgment (Doc. 9) be **GRANTED.**

Signed: January 4, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).